IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

JEFF KIRK AND GREG DAVIS, )
)
Plaintiffs, )
)
vs. )
)
THE CITY OF KOKOMO, THE KOKOMO ) 1:09-cv-1401 RLY-DML
POLICE DEPARTMENT, GREG GOODNIGHT, )
Individually, and in his Official Capacity as Mayor )
of the City of Kokomo, ROBERT BAKER, )
Individually, and in his Official Capacity as Chief )
of the Kokomo Police Department, DAVID )
MITCHELL, Individually and in his Official Capacity )
as Captain of the Professional Standards Unit of )
the Kokomo Police Department and MARK )
MILLER, Individually and in his Official Capacity )
as a Sergeant of the Kokomo Police Department, )
and DEREK SUBLETTE, Individually and in his )
official capacity as City of Kokomo Corporation )
Counsel. )
)
Defendants. )
)

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Come now Plaintiffs, Jeff Kirk (hereinafter "Kirk") and Greg Davis (hereinafter "Davis"), by counsel, Peter H. Rosenthal, and for their Complaint for Damages against Defendants, Mayor Greg Goodnight (hereinafter "Goodnight"), Individually, and in his official capacity as Mayor of the City of Kokomo, State of Indiana; Robert Baker, Individually, and in his official capacity as Chief of the Kokomo Police Department; David Mitchell, Individually and in his official capacity as Captain of the Professional

Standards Unit of the Kokomo Police Department; Mark Miller, Individually and in his official capacity as a Sergeant of the Kokomo Police Department; and Derek Sublette, Individually and in his official capacity as City of Kokomo Corporation Counsel, for conspiring, under color of state law, to deprive Kirk and Davis of their rights secured under the Constitution and laws of the United States, in violation of 42 U.S.C. 1983, for violation of Federal Racketeering and Corrupt Organization Act (R.I.C.O.) for their participation in and violation of more than two (2) Indiana Criminal Codes culminating in violations of 42 U.S.C. 1983, and for Outrage, Defamation, False Light Publicity and Public Disclosure of Private Facts.

## I. Parties, Jurisdiction and Venue

1. Plaintiff Jeff Kirk is a citizen of the United States and was, at all times relevant to this action, a sworn police officer employed by the Kokomo (Indiana) Police Department (hereinafter "K.P.D."), working and residing in Kokomo, Indiana, within the geographical boundaries of Howard County, Indiana.

2. Plaintiff Greg Davis s a citizen of the United States and was, at all times relevant to this action, a sworn police officer employed by the K..P.D., working and residing in Kokomo, Indiana, within the geographical boundaries of Howard County, Indiana.

3. Defendant Greg Goodnight is the Mayor of the City of Kokomo and was, at all times relevant to this action, employed by the City of Kokomo, has performed his job duties, and has resided in Kokomo, Indiana, within the geographical boundaries of Howard County, Indiana.

4. Defendant Robert Baker, at all times relevant to this action, was a sworn police officer serving in the capacity of Chief of Police with the K.P.D., has been employed by the City of Kokomo and has performed his job duties primarily within the City of Kokomo, while residing in Kokomo, Indiana, within the geographical boundaries of Howard County, Indiana.

5. Defendant David Mitchell, at all times relevant to this action, was a sworn police officer serving in the capacity of captain/Commander of the Professional Standards Unit with the K.P.D., has been employed by the City of Kokomo and has performed his job duties primarily within the City of Kokomo, while residing in Kokomo, Indiana, within the geographical boundaries of Howard County, Indiana.

6. Defendant Mark Miller, at all times relevant to this action, was a sworn police officer serving as a Sergeant or other sworn position within the K.P.D., has been employed by the City of Kokomo and has performed his job duties primarily within the City of Kokomo, while residing in Kokomo, Indiana, within the geographical boundaries of Howard County, Indiana.

7. Defendant Derek Sublette, at all times relevant to this action, was the City of Kokomo Corporation Counsel, has been employed by the City of Kokomo and has performed his job duties primarily within the City of Kokomo, while residing in Kokomo, Indiana, within the geographical boundaries of Howard County, Indiana.

8. Plaintiffs have complied with the requirements of Indiana Code 34-15-4-2 by providing written notice of their intent to sue.

9. This action is brought pursuant to 42 U.S. C. §1983 to redress the deprivation of rights secured to Jeff Kirk and Greg Davis, under the Eighth and

Fourteenth Amendments to the Constitution of the United States of America, as well as pursuant to the laws of the State of Indiana.

10.    The jurisdiction of this court is founded upon 28 U.S.C. §1331, 28 U.S.C. §1343, and 28 U.S.C. §1367.

11.    The actions and events complained of herein took place in the County of Howard, State of Indiana, and are within the venue of this court.

## II.    FACTUAL ALLEGATIONS

11.    On January 1, 2008, Goodnight assumed the office of Mayor of the City of Kokomo as a result of having won the mayoral election in November, 2007.  Prior to the November, 2007 election Goodnight received substantial campaign monetary support from the family of a Kokomo, Indiana businessman whose name has been withheld from this document due to an ongoing investigation being conducted by the Federal Bureau of Investigation ("F.B.I").

12.    On or about January 1, 2008, Baker in his official capacity as Chief of Police of the KPD, took possession of a "confidential criminal intelligence packet" (known and referred to as the "FBI Packet".)  The FBI Packet was prepared in 2006 by Miller who was assigned to the Special Investigations Section ("SIU").  Some of the information contained in the FBI Packet was provided to Miller by a Confidential Informant ("C.I.") whose name has been withheld from this document.  The information in the FBI Packet contained allegations of criminal misconduct by the local businessman (hereinafter referred to as "said businessman") and certain KPD officers who were/are associated with said businessman.

13. On or about January 10, 2008, Baker assigned the FBI Packet to Mitchell for investigative follow-up. Mitchell concluded his investigation on or about January 29, 2008 and determined, officially, that there was no substantive support for allegations against said businessman nor against any KPD officers.

14. Mitchell's conclusions were inconsistent with what he knew to be the truth, in that the name of KPD officer James Lushin (hereinafter "Lushin"), who was assigned to SIU at the time of Mitchell's investigation, was included in the FBI Packet.

15. James Lushin was/is a personal friend of Baker and a relative of Mayor Goodnight.

16. On or about January 29, 2008 Mitchell returned the FBI Packet to Baker who, in his official capacity as the Chief of Police, and in violation of department policies and procedures, then took the FBI Packet to his home and hid it away in his personal safe located in his bedroom closet.

17. In 2008 Kirk was employed by the KPD as a Lieutenant assigned to the Criminal Investigations Section ("CIS"), and briefly to the Special Investigations Unit ("SIU") until his demotion to Patrol Officer in or about September 2008.

18. In 2008, Davis was employed by the KPD as Major of Investigations, being second in command of the agency, until he was demoted to his permanent rank of Captain on March 24, 2008 and subsequently demoted to Lieutenant in or about September 2008.

19. On or about January 22, 2008 a fire occurred at Crossroads Community Church Oakford Campus facility located in Howard County, Indiana.

20. On or about February 6, 2008 a Pastor at Crossroads asked Kirk to inquire

about the church fire, and related his understanding that said businessman had been named as a potential suspect in an arson investigation relating to the fire. Subsequently, on or about February 7, 2008, Kirk, in his capacity as a KPD officer, consulted with Davis, also in is official capacity as a KPD officer, about the Pastor's request for follow-up investigation.

21. On or about February 8, 2008, an Arson Investigator of the Kokomo (Indiana) Fire Department ("KFD") informed Kirk and Davis of ongoing active Arson Investigations that implicated said businessman and some associates who work with/for him. The Arson Investigator further related that ongoing investigations may additionally implicate several KPD Officers in misconduct due to their association with said businessman, as well as reveal the existence of witness accounts of criminal misconduct.

22. On or about November 2007, the Arson Investigator, in her official capacity as a sworn investigator with KFD, interviewed a former employee of said businessman who indicated in a recorded interview that several KPD and other law enforcement officers were close personal friends of said businessman and that they may been involved in illegal activities with said businessman. On or about February 7, 2008, Kirk viewed the DVD of the interview.

23. On or about February 8, 2008, Kirk met with Davis and discussed the need to obtain investigatory assistance from the FBI and Indiana State Police regarding allegations of criminal activity of said businessman.

24. On or about February 13, 2008, Baker was briefed by Davis about the criminal allegations described above and, at the request of Davis, Baker approved the

solicitation and utilization of outside agencies, including the Federal Bureau of Investigation ("FBI") to assist in the investigation of said businessman. Due to the sensitivity of the allegations and need for an undercover police operation, Davis requested that Baker keep this investigation confidential and that Goodnight not be informed due to Goodnight's association with said businessman's family.

25. On or about February 13, 2008, after briefing Baker and receiving his approval to proceed, the FBI was contacted and a meeting was arranged.

26. Subsequent to the confidential Davis/Baker meeting on February 13, 2008, Baker, in his official capacity as Chief of Police, informed Goodnight of the referenced criminal investigation of said businessman and, in doing so, conspired to obstruct the investigation of said businessman by Davis, Kirk, and the KFD, in violation of Indiana Criminal Code 35-44-3-5 and 35-41-5-2; engaged in Official Misconduct in violation of Indiana Criminal Code 35-44-1-2; and Conspired to Commit Corrupt Business Influence in violation of Indiana Code 35-45-6-2.

27. Subsequent to the confidential Davis/Baker meeting on February 13, 2008, Miller went to the residence of the confidential information and told said confidential informant not to cooperate with the police in their investigation of the allegations included in the FBI Packet and other investigations of said businessman. Miller further told confidential informant not be concerned about information contained in the FBI Packet due to his friendship with Baker and Goodnight. In doing so, Miller conspired to commit Obstruction of Justice (Class D Felony) in violation of Indiana Criminal Code 35-41-5-2; Obstructed Justice in violation of I.C. 35-44-1-2; engaged in Official Misconduct (Class D Felony); and Corrupt Business Influence (Class C Felony)

in violation of I.C. 35-45-6-2.

28. On or about February 17, 2007, Davis was contact by a representative of the Howard County Sheriff's Department ("HCSD") and, after a short briefing concerning a Compact Disc ("CD") recording and its origin, Davis heard and was tendered a copy of what is referred to as the "Confidential Informant CD".

29. On or about February 19, 2008, Baker initiated a private conversation with the KFD Arson Investigator and inquired as to the nature and status of her ongoing Arson investigations.

30. On or about February 25, 2008 Davis briefed Kirk on the confidential informant CD at which time Kirk listened to it's content.

31. On or about February 27, 2008 Kirk met with an FBI agent as authorized by Baker. The agent was briefed concerning the potential criminal enterprise of said businessman and the potential of internal agency and/or criminal misconduct by KPD officers who may be associated with him. The confidential informant CD, which arose as a separate byproduct of the ongoing Arson/Criminal investigations, was also discussed. As a result of the meeting, the agent requested that the KPD take no further action pending approval from his administrative supervisors to initiate a joint operation.

32. On or about March 17, 2008, Kirk and Davis spoke with Baker concerning the Confidential Informant CD and its implications, including criminal conduct by Miller and implications of criminal misconduct by Baker. At that time, Baker summoned Mitchell to his office and, following a discussion between Baker, Mitchell, Kirk and Davis, Baker advised Mitchell to relinquish the FBI Packet. When Mitchell reminded Baker that he did not possess the FBI Packet, Baker recalled that he did in fact have

possession of the only copy of the FBI Packet and that it was at his residence in his personal safe. The removal of the FBI Packet by Baker to his personal residence was in violation of I.C. 35-44-3-4, Obstruction of Justice (Class D. Felony); I.C. 5-2-4, relating to the improper storage and disclosure of confidential criminal intelligence information, a Class A Misdemeanor; and I.C. 35-44-1-2, Official Misconduct (Class D Felony).

33. On or about March 17, 2008, Kirk went with Baker to Baker's residence where they entered Baker's bedroom and accessed Baker's personal safe from which the FBI Packet was retrieved.

34. On or about March 17, 2008, Kirk and Davis played the Confidential Informant CD for Goodnight and Baker and discussed its potential implications. During this meeting, Baker stated to the Mayor, "Here's the deal, James Lushin's (KPD officer) name is on this."

35. On or about March 18, 2008 Baker told Davis that he had made the decision, as the Chief Executive Officer of the KPD, that Miller be called to Davis' office where Miller would be given the option to voluntarily resign his rank of Sergeant and return to patrol officer or face a Professional Standards Investigation for his actions and comments recorded on the Confidential Informant CD. Mitchell was directed by Baker to attend the meeting with Miller in the event Miller chose not to voluntarily resign his position.

36. On or about March 18, 2008 Davis and Mitchell met with Miller in Davis' office as ordered by Baker where Miller was provided the options outlined above. Miller admitted wrongdoing and voluntarily resigned his Sergeant's rank.

37. On or about March 18, 2008 an FBI agent met with Kirk. The agent advised he had been briefed by another agent concerning the need for outside investigative assistance in investigating a potential criminal enterprise of said businessman. The agent advised that the FBI was going to pursue the investigation, but would not be using any officers from the KPD. This information was relayed to Baker on March 18, 2008.

38. On or about March 18, 2008 Baker telephoned Davis to express his and Goodnight's displeasure for the fact that neither Baker nor Mitchell had been informed, prior to March 17, 2008, about the confidential informant CD.

39. On or about March 19, 2008, Baker requested that Davis prepare copies of all documentation pertaining to Miller, including the FBI Packet and a copy of the Confidential Informant CD.

40. Between March 17, 2008 and March 21, 2008, Goodnight, Baker, Mitchell, Sublette and unknown others within the City of Kokomo and/or KPD administration, conspired to discredit and remove Kirk and Davis from the KPD thereby prohibiting Kirk and Davis assisting in the investigation of said businessman or involved KPD officers. Their actions are in violation of the following Sections Indiana Criminal Code: I.C. 35-44-3-4, Obstruction of Justice (Class D. Felony); I.C. 35-44-1-2, Official Misconduct (Class D Felony)' and I.C. 35-44-6-2, Corrupt Business Influence (Class C Felony).

41. On or about March 22, 2008, without the knowledge of Davis, the lock to Davis' office was changed, Davis' office contents, both departmental and personal in nature, were seized and searched by, or at the direction of, Baker and Mitchell.

42. On or about March 24, 2008, Kirk's office contents, both departmental and

personal, were seized and searched by, or at the direction of, Baker and Mitchell.

43. On or about March 24, 2008, Davis was demoted from his appointed rank of Major to his permanent rank of Captain.

44. On or about March 24, 2008, Kirk and Davis were informed of the initiation of a Professional Standards Investigation against them, that they were being relieved of their duties and being placed on administrative leave pending the investigation. Therefore, for a period of six (6) months, Kirk and Davis were ordered to stay at their respective residences between the hours of 8:00 a.m. - 4:00 p.m., Monday - Friday.

45. On or about April 2, 2008, Goodnight, in his official capacity as Mayor of the City of Kokomo, and Sublette, in his official capacity of corporation counsel, personally released and/or authorized the release of the confidential and statutorily protected evidence previously identified as the FBI Packet and the confidential informant CD to the Kokomo Perspective. By releasing the confidential documents and CD to the Kokomo Perspective with knowledge that the content would be printed, Goodnight and Sublette "tipped off" said businessman and/or his associates of the allegations and impending investigations. The actions of Goodnight and Sublette violated the following sections of Indiana Criminal Code: I.C. 35-44-3-4, Obstruction of Justice (Class D. Felony) (with respect to I.C. 5-2-4-7, a Class A Misdemeanor); I.C. 35-44-1-2, Official Misconduct (Class D. Felony); I.C. 35-41-5-2, Conspiracy to Commit Obstruction of Justice (Class D Felony); and I.C. 35-45-6-2, Corrupt Business Influence (Class C Felony).

46. Commencing on or about April 23, 2008 the Kokomo Perspective printed articles from the FBI Packet and confidential informant CD which they had received

from Goodnight and Sublette. These articles continued for several weeks.

47. Goodnight, Baker and Sublette knowingly and intentionally authorized and permitted Kirk and Davis to be charged, investigated and tried before the City of Kokomo Board of Works and Safety ("B.O.W.") for the release of said evidence to the Kokomo Perspective.

48. On or about April 3, 2008, Mitchell took a sworn statement from Miller concerning the events that took place in Davis' office on March 18, 2008 during which Miller voluntarily resigned his rank. At that time Mitchell knowingly and intentionally allowed Miller to make false statements in contradiction of the recorded and transcribed meeting of March 18, 2008, and Mitchell knowingly and intentionally submitted Miller's false statement as evidence against Kirk and Davis at their hearing before the B.O.W. on September 5, 2008. Mitchell's actions violated the following sections of the Indiana Criminal Code: I.C. 35-44-2-1, Perjury (Class D. Felony); I.C. 35-44-1-2, Official Misconduct, (Class D Felony), all in furtherance of: I.C. 35-45-6-2, Corrupt Business Influence, (Class C Felony).

49. In December, 2008, the City of Kokomo, inclusive of Goodnight, Baker, Mitchell and Sublette resolved the civil law suit which had been filed by Miller by monetary settlement and restoration of Miller's Sergeant's rank, disregarding his actions on the confidential informant CD, his voluntary resignation and the fact that he provided false information in his statement to Mitchell.

50. On or about April 11, 2008, Kirk and Davis were ordered to participate in interrogations conducted by Mitchell. Despite numerous written and verbal requests by Kirk and Davis and their legal counsel, to afford Kirk and Davis counsel during their

interrogation as guaranteed by departmental policy and the constitution, Kirk and Davis were denied counsel at those interrogations.

### III.   LEGAL ALLEGATIONS

### COUNT ONE: VIOLATION OF 42 U.S.C. AGAINST GOODNIGHT

51.   Plaintiffs restate each and every fact and allegation listed in paragraphs one (1) through fifty (50) as though fully set forth herein.

52.   The actions of Goodnight deprived Kirk and Davis of their legally protected property interest in their respective permanent ranks of Lieutenant and Captain.

53.   Goodnight's acts, taken under color of law, consist of him knowingly and intentionally releasing confidential, legally protected evidentiary and/or intelligence related documents in violation of Indiana Code 5-2-4, for the purpose of personally hindering and interfering with an ongoing FBI investigation for the personal benefit of himself and his benefactors (said businessman and/or his family) who financially supported his 2007 Mayoral campaign, all of which was done purposefully to hinder the due process rights of Kirk and Davis.

54.   As a result of Goodnight's unlawful actions, Kirk and Davis have suffered damages including but not limited to loss of rank, monetary loss, emotional duress, physical duress, humiliation, embarrassment, workplace harassment, discrimination and damage to their personal and professional reputations.

## COUNT TWO: VIOLATION OF 42 U.S.C. 1983 AGAINST BAKER

55. Plaintiffs restate each and every statement and allegation as listed in paragraphs one (1) through fifty-four (54) as though fully set forth herein.

56. The actions of Baker deprived Kirk and Davis of their legally protected property interest in their respective permanent ranks of Lieutenant and Captain, and were taken under the color of law.

57. The actions of Baker in depriving Kirk and Davis of legal counsel while additionally subjecting them to an illegal search and seizure of property of which they had a reasonable expectation of privacy, deprived Kirk and Davis of their constitutional rights.

58. Baker's actions deprived Kirk and Davis of their constitutionally protected due process rights.

59. As a result of Baker's unlawful actions, Kirk and Davis have suffered damages including but not limited to loss of rank, monetary loss, emotional duress, physical duress, humiliation, embarrassment, workplace harassment and discrimination and damage to their personal and professional reputations.

## COUNT THREE: VIOLATION OF 42 U.S.C. 1983 AGAINST MITCHELL

60. Plaintiffs restate each and every statement and allegation as listed in paragraph one (1) through fifty-nine (59) as though fully set forth herein.

61. The actions of Mitchell, taken under color of law, deprived Kirk and Davis of their legally protected property interest in their respective permanent ranks of Lieutenant and Captain.

62. The actions of Mitchell deprived Kirk and Davis of due process and legal counsel, while additionally subjecting them to illegal search and seizure of property of which they had a reasonable expectation of privacy.

63. The actions of Mitchell disclosing to the staff of the Kokomo Perspective portions of KPD confidential investigation was criminal, and deprived Kirk and Davis of due process, among other constitutional protections.

64. As a result of Mitchell's unlawful actions, Kirk and Davis have suffered damages including but not limited to: loss of rank, monetary loss, emotional duress, physical duress, humiliation, embarrassment, workplace harassment, discrimination and damages to their personal and professional reputations.

### COUNT FOUR: CONSPIRACY TO VIOLATE 42 U.S.C. 1983 AGAINST GOODNIGHT, BAKER, MITCHELL AND MILLER

65. Plaintiffs restate each and every statement and allegation in paragraph one (1) through sixty-four (64) as though fully set forth herein.

66. Goodnight, Baker, Mitchell and Miller, individually and/or collectively, conspired to deprive Kirk and Davis of their rights secured by the Constitution and laws of the United States by violating the noted sections of the Indiana Criminal Codes and the Federal Racketeer Influence and Corrupt Organizations (RICO Act) as codified in Chapter 96 of Title 18 of the United States Code, 18 U.S.C. § 1961-1968 and under state law.

67. The actions of Goodnight, Baker, Mitchell and Miller were taken under color of state law.

68. As a result of Goodnight, Baker, Mitchell and Miller's unlawful actions, Kirk

and Davis have suffered damages including but not limited to loss of rank, monetary loss, emotional duress, physical duress, humiliation, embarrassment, workplace harassment, discrimination and damage to their personal and professional reputations.

### COUNT FIVE: FALSE LIGHT PUBLICITY AND DEFAMATION AGAINST GOODNIGHT, BAKER, MITCHELL SUBLETTE AND MILLER

69. Plaintiffs restate each and every statement and allegation in paragraphs one (1) through sixty-eight (68) as though fully set forth herein.

70. By charging and publicly alleging that Kirk and Davis released confidential documents to the press, which were printed in a public newspaper, when in fact those documents had been released by Goodnight and Sublette, Goodnight, Mitchell, Sublette and Miller placed Kirk and Davis before the public in false light.

71. The false light was highly offensive to Kirk and Davis.

72. The actions of Goodnight, Baker, Mitchell, Sublette and Miller were taken with knowledge of falsity in reckless disregard of contrary evidence, resulting in false light publicity and defamation.

73. The actions of Goodnight, Baker, Mitchell, Sublette and Miller were taken with malice and deliberate indifference in that, at the time of their actions and statements, Goodnight, Baker, Mitchell, Sublette and Miller had actual knowledge that their statements were false and were presented with reckless disregard for the truth.

74. The actions of Goodnight, Baker, Mitchell Sublette and Miller exhibited negligence, deliberate indifference and intentional disregard for due process of Kirk and Davis. Their respective actions were committed with malice in that their purpose was to cause harm to Kirk and Davis' personal and/or professional reputations.

### COUNT SIX: VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT, 18 U.S.C. § 1961-1968, AGAINST GOODNIGHT, BAKER, MITCHELL AND SUBLETTE

75. Plaintiffs restate the following statements and allegations as listed in paragraphs one (1) through seventy-four (74) as though fully set forth herein.

76. The actions of the defendants meet and or exceeded the requirements for violation of the Indiana Criminal Code for Corrupt Business Influence. (I.C. 35-45-6-2)

77. The actions of Defendants were in violation of Indiana Code 35-44-3-4, "Obstruction of Justice" which meet or exceed the requirements for violations of 18 U.S.C. § 1512.b. and §1512.c.

78. With multiple violations of the aforementioned U.S. Code, Defendants' offenses meet and exceed the necessary predicate offenses for violation of the Federal Racketeer Influenced and Corrupt Organization Act as defined by 18 U.S.C. § 1961-1968.

### IV. RELIEF REQUESTED

79. Plaintiffs request that the Court order the Defendants, jointly and severally, to pay them compensatory damages for their emotional and physical distress, humiliation, embarrassment, deprivation of substantive and procedural fair due process and damage to their personal and professional reputations caused by the defendants' actions; that the Court order the defendants, jointly and severally, to pay them punitive damages for their willful, negligent, reckless and malicious actions; that the Court order the defendants, jointly and severally, to pay their reasonable attorney fees and cost of

litigating this action; that the Court order the defendants, jointly and severally, to pay both pre-judgment and post-judgment interest on all sums awarded; and that the Court order the defendants, jointly and severally, to provide any and all other relief to which the Plaintiffs may be entitled.

Respectfully submitted,

LAW OFFICE OF PETER H. ROSENTHAL

By: Peter H. Rosenthal
Attorney No. 15963 - 49

LAW OFFICE OF PETER H. ROSENTHAL
101 West Ohio Street
Suite 2000
Indianapolis, IN  46204
(317)464-2089