UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JEFF KIRK and GREG DAVIS, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 1:09-cv-1401-TWP-DML |
| | ) |
| THE CITY OF KOKOMO, | ) |
| THE KOKOMO POLICE DEPARTMENT, | ) |
| GREG GOODNIGHT, individually and in | ) |
| his official capacity, ROBERT BAKER, | ) |
| individually and in his official capacity, | ) |
| DAVID MITCHELL, individually and in | ) |
| his official capacity, MARK MILLER, | ) |
| individually and in his official capacity, | ) |
| and DEREK SUBLETTE, individually and | ) |
| in his official capacity, | ) |
| | ) |
| Defendants. | ) |

## ENTRY ON MOTION TO DISMISS AND ALTERNATIVE MOTION TO STAY

This matter involving alleged violations of Plaintiffs' constitutional rights, the federal Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68, as well as state law tort claims, comes before the Court on Defendants' Motion to Dismiss and Alternative Motion to Stay [Dkt. 11]. This suit stems from Plaintiffs', Greg Davis ("Davis") and Jeff Kirk ("Kirk"), demotion within the Kokomo Police Department, the Kokomo Police Department's search of Davis' and Kirk's respective offices, and the Defendants' public charge that Kirk and Davis released confidential documents to the media. Plaintiffs allege that these actions violate their Fourth Amendment rights and their Fourteenth Amendment procedural due process rights. Further, Plaintiffs claim that Defendants conspired to violate 42 U.S.C. § 1983 and violated RICO, entitling Plaintiffs to civil damages. Plaintiffs also make additional state law claims for false light publicity and defamation. For the reasons set out below the Court **GRANTS**

Defendants' Motion to Dismiss and **DISMISSES** as **MOOT** Defendants' Alternative Motion to Stay [Dkt. 11].

## I. <u>BACKGROUND</u>

For the purposes of a motion to dismiss under Rule 12(b) (6), the Court accepts all of the Plaintiffs' well-pleaded allegations as true and draws all favorable inferences for the Plaintiffs. *See Killingsworth v. HSBC Bank*, 507 F.3d 614, 618 (7th Cir. 2007). With this standard in mind, the Court recites the facts as they are contained within the Complaint.

Greg Goodnight ("Goodnight") was elected mayor of Kokomo, Indiana with substantial financial support from the family of a Kokomo, Indiana businessman (the "Businessman"). Compl. ¶ 1. On January 1, 2008, Goodnight assumed his office. *Id.* The same day, Robert Baker ("Baker"), the Chief of Police of the Kokomo Police Department (the "KPD"), took possession of a confidential criminal intelligence packet (the "FBI Packet"). *Id.* ¶ 2. Mark Miller ("Miller"), a Sergeant in the KPD, prepared the FBI Packet with information provided by a confidential informant. *Id.* The information contained within the FBI Packet included allegations of criminal misconduct by the Businessman and certain KPD officers who were associated with the Businessman. *Id.* On January 10, 2008, Baker assigned the FBI Packet to David Mitchell ("Mitchell"), Captain of the Professional Standards Unit of the KPD, for additional investigation. *Id.* ¶ 13. Mitchell concluded his investigation, determined that there was no substantive support for the allegations, and returned the FBI Packet to Baker. *Id.* ¶¶ 13, 16. Baker took the FBI Packet to his home and placed it in his personal safe. *Id.* ¶ 16.

Kirk was a Lieutenant in the KPD assigned to the Criminal Investigations Section and briefly to the Special Investigations Unit prior to his demotion. *Id.* ¶ 17. Davis was a Major of Investigations with the KPD prior to his demotion. *Id.* ¶ 18. On February 8, 2008, Kirk and Davis met and discussed the need to obtain outside investigatory assistance regarding the allegations of criminal activity involving the Businessman. *Id.* ¶ 23. On February 13, 2008, Davis briefed Baker about additional criminal allegations concerning the Businessman and Baker approved the utilization of outside agencies to investigate the Businessman. *Id.* ¶ 24. Davis requested that Baker keep the investigation confidential, particularly from Goodnight. *Id.* After the February 13, 2008 meeting, Baker informed Goodnight of the investigation. *Id.* ¶ 26. Additionally, Miller went to the residence of the confidential informant and told the confidential informant not to cooperate with the police investigation of the Businessman. *Id.* ¶ 27.

On February 17, 2008, a representative of the Howard County Sheriff's Department contacted Davis to discuss a compact disk that the confidential informant recorded (the "Confidential Informant CD"). *Id.* ¶ 28. After this conversation, Davis heard and received a copy of the Confidential Informant CD. *Id.* On February 25, 2008, Davis briefed Kirk on the nature of the Confidential Informant CD, and Kirk listened to the content of the CD. *Id.* ¶ 30. On February 27, 2008, Kirk met with an FBI agent and briefed him concerning the potential criminal enterprise of the Businessman and the KPD officers associated with him. *Id.* ¶ 31. They also discussed the Confidential Informant CD. *Id.* The FBI agent requested that the KPD take no further action pending approval to initiate a joint operation. *Id.* On March 17, 2008, Kirk and Davis spoke to Baker concerning the Confidential Informant CD. *Id.* ¶ 32. Specifically, they discussed Miller's criminal conduct captured on the Confidential Informant CD and the implications of criminal misconduct by Baker. *Id.* Baker then summoned Mitchell

to his office and continued the discussion in his presence. *Id.* The same day, Kirk and Baker went to Baker's residence to pick up the FBI Packet that had been stored there. *Id.* ¶ 33. Also on March 17, 2008, Kirk and Davis played the Confidential Informant CD for Goodnight and Baker and discussed its implications. *Id.* ¶ 34. The next day, Baker instructed Davis to call Miller to Davis' office to allow him to voluntarily resign his rank of Sergeant or face Professional Standards Investigation for his actions and comments recorded on the Confidential Informant CD. *Id.* ¶ 35. On March 18, 2008, Mitchell and Davis met with Miller. Miller admitted wrongdoing and voluntarily resigned his rank as Sergeant. *Id.* ¶ 36.

On March 18, 2008, Baker expressed his and Goodnight's displeasure to Davis about the fact that he informed neither Baker nor Mitchell about the Confidential Informant CD prior to March 17, 2008. *Id.* ¶ 38. On March 22, 2008, without Davis' knowledge, Baker and Mitchell had Davis' office searched, its departmental and personal contents seized, and his office lock changed. *Id.* ¶ 41. On March 24, 2008, Kirk's office was similarly searched and its contents similarly seized. *Id.* ¶ 42. That same day, Davis was demoted from his appointed rank of Major to his permanent rank of Captain, and both Davis and Kirk learned that a Professional Standards investigation was being initiated against them. *Id.* ¶ 44. They were relieved of their duties and placed on administrative leave pending the outcome of the investigation and were ordered to stay at their respective residences between the hours of eight o'clock a.m. and four o'clock p.m., Monday through Friday for the next six months. *Id.*

On April 2, 2008, Derek Sublette ("Sublette"), City of Kokomo Corporation Counsel, and Goodnight authorized the release of the FBI Packet and the Confidential Informant CD to the local newspaper, the *Kokomo Perspective*. *Id.* ¶ 45. Goodnight, Baker, and Sublette permitted Kirk and Davis to be charged, investigated, and tried before the City of Kokomo Board of Works

and Safety (the "Board") for the release of the FBI Packet and the Confidential Informant CD to the *Kokomo Perspective*. *Id.* ¶ 47. On April 3, 2008, Mitchell took a sworn statement from Miller and allowed him to make statements in contradiction to the recorded and transcribed March 18, 2008 meeting. *Id.* ¶ 48. Mitchell submitted this statement as evidence against Kirk and Davis at their hearing before the Board. *Id.*

On November 11, 2009, Plaintiffs filed a Complaint alleging that Goodnight, Baker, and Mitchell violated 42 U.S.C. § 1983 by violating Plaintiffs' Fourth and Fourteenth Amendment rights; that Goodnight, Baker, Mitchell and Miller conspired to violate Section 1983 with respect to Kirk and Davis; false light and defamation claims against Goodnight, Baker, Mitchell, Sublette, and Miller; and that Goodnight, Baker, Mitchell and Sublette violated RICO.

## II. <u>DISCUSSION</u>

A. **Defendants' 12(b) (6) Motion to Dismiss**

   1. **Legal Standard**

Pursuant to Federal Rules of Civil Procedure 12(b)(6), the Court must take the facts alleged in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. *Mosley v. Klincar*, 947 F.2d 1338, 1339 (7th Cir. 1991). The complaint must contain only *"a short and plain statement of the claim showing that the pleader is entitled to relief,"* (Fed. R. Civ. P. 8(a) (2)), and there is no need for detailed factual allegations. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (citation omitted). Nevertheless, the statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. (citations and quotations omitted). "Although this does 'not require heightened fact pleading of specifics,' it does require the complaint to contain 'enough facts to state a claim to

relief that is plausible on its face.'" *Killingsworth,* 507 F.2d at 618 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

    **2.   RICO**

Although RICO is largely a criminal statute, it allows "a civil cause of action for any person 'injured in his business or property' by reason of" its violation. *Beck v. Prupis*, 529 U.S. 494, 496 (2000) (quoting 18 U.S.C. § 1964(C)). The injury requirement contained within the statute is a standing requirement, not merely an element of the cause of action. *See Gagan v. Am. Cablevision, Inc.*, 77 F.3d 951, 958-59 (7th Cir. 1996). "[T]he terms business or property are, of course, words of limitation which preclude recovery for personal injuries and the pecuniary losses incurred there from." *Evans v. City of Chi.*, 434 F.3d 916, 925 (7th Cir. 2006) (quoting *Doe v. Roe*, 958 F.2d 763, 768 (7th Cir. 1992)). A civil RICO plaintiff must properly allege the RICO violation was the proximate cause of his injury. *Kaye v D'Amato* 2009 WL456948,*10 (7th Cir. 2009).

Plaintiffs premise their RICO claim on several violations of 18 U.S.C. § 1512, which relates to Obstruction of Justice - Tampering with a witness, victim, or an informant. They enumerate six different acts that occurred over the course of three months upon which they base their claim: (1) Baker storing the FBI Packet at his home; (2) Baker telling Goodnight about the criminal investigation of the Businessman; (3) Miller telling the confidential informant not to cooperate with the police investigation into the Businessman; (4) a conspiracy between Goodnight, Baker, Mitchell and Sublette; (5) Goodnight and Sublette releasing the FBI Packet to the *Kokomo Perspective*; and (6) Miller lying in a sworn statement about the events that took place when he resigned his rank. The Plaintiffs have offered no factual allegations of an injury to their "business or property." Plaintiffs' failure to allege a causal connection between the

6

violations and injury to their business or property and failure to properly allege a pattern for a RICO claim are fatal. Accordingly, Plaintiffs lack standing to assert any RICO claim against Defendants and, therefore, Count Six of Plaintiffs' Complaint is **DISMISSED**.

### 3. Due Process

Defendants assert that Plaintiffs fail to state a Section 1983 claim based upon their Due Process rights because although Plaintiffs may have been deprived of their property interest in their permanent ranks, they did not plead that they were denied a hearing before their demotions. *See Ellis v. Sheahan*, 412 F.3d 754, 756 (7th Cir. 2005) (stating that "to have and lose an entitlement is not enough to establish a deprivation of property without due process of law . . . [t]he plaintiff had to show that the property was taken away from her without notice and the opportunity for a hearing at which she could try to contest the deprivation"). Plaintiffs concede in their Complaint that they did receive a hearing before the Board prior to their demotions.

In their Response, Plaintiffs argue that Davis, at least, was denied due process when he was demoted from Major to Captain without a hearing and before any charges were brought against him. However, such a claim fails as Davis has no protectable property interest in his rank of Major. A police department rank of Major in Indiana is an "upper level policy making position." *See* Ind. Code § 36-8-1-12; *Allen v. City of Carmel*, 830 F. Supp. 482, 483 (S.D. Ind. 1993). The Indiana Code permits an executive to demote a person from an "upper level policy making position" without a hearing. Ind. Code. § 36-8-3-4(m). Accordingly, the appointed police rank of Major is not a rank in which an individual can have a protectable property interest. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Therefore, Davis was entitled to no procedural due process upon his demotion, and the Complaint states no cognizable Section 1983 claim as to Davis' demotion from Major to Captain. Because Plaintiffs failed to plead that Kirk and Davis

7

were denied notice and a hearing with regard to the loss of their respective permanent ranks of Lieutenant and Captain, their Section 1983 claims against Goodnight, Baker, and Mitchell are **DISMISSED**.  *See Ellis*, 412 F.3d at 756.

   4.   **Fourth Amendment**

In Counts two and three of the Complaint, Plaintiffs bring Section 1983 claims against Baker and Mitchell premised on the Fourth Amendment, asserting that they were subjected to an "illegal search and seizure of property of which they had a reasonable expectation of privacy." Compl. ¶¶ 57, 62.  Defendants argue that Plaintiffs were subject to a professional standards investigation at the time that their offices were searched and, accordingly, Plaintiffs fail to state a claim under the Fourth Amendment because the office searches were reasonable under the circumstances.  Plaintiffs argue that the searches of Davis' and Kirk's offices and desks and the seizures of their property was not a part of an investigation into work-related misconduct because the search of Davis' office, at least, took place before either man was notified of any workplace investigation.  Further, Plaintiffs note that these searches occurred contrary to KPD policy.  The searches took place on two different days.  The search of Davis' office took place two days before the men were informed of the professional standards investigation and the search of Kirk's office took place on the day that they were informed of the investigation.

In *O'Connor v. Ortega*, 480 U.S. 709, 719-26 (1987), a plurality of the Supreme Court found that a warrant or probable cause standard does not apply when a government employer searches an employee's desk or office to retrieve government property or investigate work-related misconduct.  Instead, a workplace search is legal if it is reasonable under all of the circumstances.  *Id.* at 725-26.  "Reasonableness is measured on a case-by-case basis and depends upon balancing the public, governmental, and private interests at stake in a given situation."

*Gossmeyer v. McDonald*, 128 F.3d 481, 490 (7th Cir. 1997) (internal citation omitted). Specifically, a workplace search is reasonable if it is "justified at its inception" and if it is "reasonably related in scope to the circumstances that prompted the search." *Ortega*, 480 U.S. at 726. The search is justified at its inception, "[i]f there are reasonable grounds to believe that the search will uncover evidence of the employee's misconduct....The search is reasonable in scope if the measures taken by the employer are reasonably related to the search's objective and they are not overly intrusive in light of the nature of the alleged misconduct." *Gossmeyer*, 128 F.3d at 491 (citing *Ortega*, 480 U.S. at 726; *Shields v. Burge*, 874 F.2d 1201, 1202 (7th Cir. 1989)).

Defendants cite three cases in support of their argument that Plaintiffs' Complaint states a reasonable workplace search upon which the Court can find no Constitutional violation. In *Gossmeyer*, the Seventh Circuit found the search of a Child Protective Investigator's office was a reasonable workplace search even though she was not informed of the investigation prior to the search because it was based on an anonymous tip with reasonable indicia of reliability that the investigator had child pornography in her office. 128 F.3d at 485, 491. In *Shields*, the Seventh Circuit expressed concern about a search of a police officer's desk as part of an investigation into whether the officer had violated any departmental rules, noting the thin record that did not establish the nature of the tip that instigated the investigation and the fact that the search did not occur until five or six months into the investigation. 874 F.2d at 1206. Ultimately, the court resolved the search issue on qualified immunity, holding that it was not clearly established that searching the officer's desk even without reasonable suspicion would violate the Fourth Amendment. *Id.* In the final case cited by Defendants, *Francis v. Giacomelli*, 588 F.3d 186, 194 (4th Cir. 2009), the plaintiff alleged that the Mayor of Baltimore directed members of the Baltimore City Police Department to enter the Police Commissioner's offices, seize personal

9

property, and detain the Police Commissioner and his deputies while ordering them to surrender their weapons, badges, identification cards and similar property without the benefit of criminal charges or a warrant. The allegations described the mayor's conduct in furtherance of his decision to terminate plaintiffs' employment. *Id.* The Fourth Circuit held that the allegations did not amount to a colorable Fourth Amendment claim because the seizure concerned departmental property and took place in the course of an employment action. *Id.* As the court stated, "it is common practice for an employer to take the employer's property away from discharged employees and to deny them access to the place of employment... the complaint fails to allege any countervailing privacy interests that would outweigh the City's interests." *Id.* at 195.

In each of these cases the search was justified at its inception. In the instant case, Baker and Mitchell do not appear to have reasonable grounds to believe that a search of Kirk's and Davis' offices would uncover evidence of employee misconduct. Defendants place much weight on the fact that Baker notified Kirk and Davis of his displeasure that they did not inform him of the Confidential Informant CD earlier prior to the searches, but that notification does not amount to grounds for a search of the two men's offices. Unlike *Gossmeyer* and *Shields*, there was no tip to provide Baker with the belief that Kirk and Davis were engaged in employee misconduct warranting a search of their offices to uncover evidence. Further, the facts underlying *Francis* are completely inapposite to this case. In the instant case, Plaintiffs protest an investigatory search. In *Francis*, the plaintiff complained of a seizure that occurred for a non-investigatory purpose. The Fourth Circuit noted that the employer's conduct in Francis was quite expected in the course of terminating an employee and accordingly, there were *"reasonable grounds for suspecting that the search was necessary for a non-investigatory work-related purpose." Ortega*, 480 U.S. at 726; *see also City of Ontario v. Quon*, 130 S. Ct. 2619, 2631 (2010) (holding

an employer's search of text messages on an alphanumeric pager was justified at its inception because it was necessary for the non-investigatory work-related purpose of determining whether the city's character limit on text messaging was sufficient to meet the city's needs). The investigatory search of an employee's office without notice and without reasonable belief that the search might produce evidence of employee misconduct is not justified in its inception.

Defendants argue that even if Plaintiffs stated a colorable violation of the Fourth Amendment in their Complaint, Defendants are entitled to qualified immunity. In order for Plaintiffs to defeat a qualified immunity defense, *"(1) the complaint must adequately allege facts that, if true, would constitute a violation of a constitutional right, and (2) the case law must be clearly established at the time of the alleged violation, so that a reasonable public official would have known that his conduct was unlawful."* Kiddy-Brown v. Blagojevich, 408 F.3d 346, 353 (7th Cir. 2005) (internal quotations omitted). The Plaintiffs have the burden to prove that a right was clearly established at the time of the conduct at issue. *Id.* (*citing Davis v. Scherer*, 468 U.S. 183, 197 (1984)). Because Davis and Kirk have adequately pled that the search of their offices violated their Constitutional rights, they bear the burden of showing that the right was clearly established in late March 2008. *See id.* To demonstrate that the right was clearly established, Plaintiffs may present a closely analogous case establishing that the Defendants' conduct was unconstitutional or present *"evidence that the Defendant's conduct was so patently violative of the constitutional right that reasonable officials would know without guidance from a court."* *Estate of Escobedo v. Bender*, 600 F.3d 770, 780 (7th Cir. 2010). A closely analogous case does not have to be one that is directly on point; the question, instead, "is whether a reasonable state actor would have known that his actions, viewed in light of the law at the time, were unlawful." *Kiddy-Brown*, 408 F.3d at 356; *see Shields*, 874 F.2d at 1208. To overcome the Defendants'

assertion of qualified immunity however, Plaintiffs must meet their burden of establishing that the conduct was unlawful or demonstrate that the violation was so obvious that a reasonable state actor would have known that his actions were in violation of the Constitution.

Plaintiffs however, completely failed to respond to Defendants' argument that they are entitled to qualified immunity with regard to Plaintiffs' Fourth Amendment claims. Accordingly, Plaintiffs have failed to carry their burden to show that their right to be free of such office searches was clearly established at the time of the searches, and Defendants are entitled to qualified immunity. *See Kiddy-Brown*, 408 F.3d at 353. For the foregoing reasons, Plaintiffs' Section 1983 claim with respect to Defendants' search of Plaintiffs' offices is **DISMISSED**.

5. **First Amendment**

In their Response, Plaintiffs raise the idea of a First Amendment claim against Defendants premised on one sentence in the Complaint that alleges when Kirk and Davis were placed on paid administrative leave, they were ordered to stay at their residences between the hours of 8:00 a.m. and 4:00 p.m., Monday through Friday for a period of six months. Plaintiffs assert that the order deprived them of their First Amendment right to exercise their religion, their right to travel freely and their right to vote. Defendants argue that Plaintiffs were paid to stay at home during business hours only and, accordingly, their rights were not violated. Indeed, Plaintiffs make no allegation that the Defendants required anything more of them than to stay home during normal business hours and continue to be paid. In *Pienta v. Village of Schaumburg*, 710 F.2d 1258, 1260 (7th Cir. 1983), the case cited by Plaintiffs in support of their claim, police officers and one civilian police employee on paid injured leave were required to stay home twenty four hours a day, seven days a week, were under surveillance, and were subject to frequent home checks by the police department. The Seventh Circuit held that the officers and

civilian police employee were effectively under house arrest and the regulations pursuant to which the police department acted were unconstitutional. *Id.*

Plaintiffs' restrictions were much narrower. Plaintiffs make no allegation in their Complaint that they were under any sort of surveillance or that they were subject to home checks by the KPD. Further, they make no allegation that they were deprived of the right to vote or that they were not free to leave their home during non-work hours. The Complaint does not support Plaintiffs' First Amendment claims or violation of their right to travel and right to vote claims. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, not when the plaintiff only raises a sheer possibility that the defendant has acted unlawfully" (quotations omitted)). Accordingly, Plaintiffs' claims relating to the order to remain at their homes during work hours (8:00 a.m. to 4:00 p.m.) while they were on paid administrative leave are **DISMISSED**.

6. **Section 1983 Conspiracy**

Conclusory allegations about a conspiracy unsupported by any factual assertions will not withstand a motion to dismiss. *See Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981); *Bedree v Estate of Lebamoff*, 2008 WL 756161 *3 n. 2 (N.D, Ind. 2008). Plaintiffs offered no factual assertions of any agreement to support a Section 1983 conspiracy claim. "To establish § 1983 liability through a conspiracy theory, a plaintiff must demonstrate that: (1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights; and (2) those individuals were willful participants in joint activity with the State or its agents." *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007). Plaintiffs offer only conclusory allegations about a conspiracy unsupported by any factual assertions and fail to plead the

involvement of any private individuals in the alleged conspiracy. As a result, Plaintiffs' claim that Defendants conspired to violate Section 1983 is **DISMISSED**.

### 7. State Law Claims

Plaintiffs assert state law claims of false light invasion of privacy and defamation based on Defendants' public allegation that Plaintiffs released the Confidential Informant CD and the FBI Packet to the media. Defendants argue that they are entitled to immunity for the initiation of an administrative proceeding, as well as immunity for discretionary functions. Further, Defendants argue that they cannot be held liable in their individual capacities for actions they took within the scope of their government employment. The defamatory statement that Plaintiffs identify in their Complaint is one Defendants made in initiating the administrative charges against Plaintiffs. *See* Compl. ¶ 70 ("By charging and publically alleging that Kirk and Davis released confidential documents to the press . . . Mitchell, Sublette and Miller placed Kirk and Davis before the public in false light"). Plaintiffs argue that they were referring to some generalized notion that Defendants allowed Plaintiffs to "shoulder the blame" for the release of confidential information to the *Kokomo Perspective* news publication. They additionally identify the lawsuit Miller filed against Davis and Kirk alleging that they provided the evidence to the *Kokomo Perspective* news publication as a defamatory statement. As the Court is limited to the allegations of the Complaint when considering a Motion to Dismiss pursuant to Rule 12(b)(6), the Court cannot consider whether the Plaintiffs could state defamation and false light claims based on Miller's lawsuit. *See* Fed. R. Civ. P. 12(b) (6). If there is some other defamatory statement that was made outside of the initiating administrative charges, plaintiffs did not identify it in the Complaint or their Response.

At bottom, under the Indiana Tort Claims Act, a governmental entity and its employees are immune from liability for the "initiation of a judicial or an administrative proceeding." *See* Ind. Code § 34-13-3-3(6). The defamatory statements alleged in the Complaint were contained in the charges filed in and used to initiate the Kokomo Board of Works and Safety administrative proceeding. Defendants are entitled to immunity for the charging statements that initiated an administrative proceeding. Accordingly, Plaintiffs' false light invasion of privacy and defamation claims are **DISMISSED**.

**B.     Defendants' Alternative Motion to Stay**

Defendants requested that the Court stay its consideration of Plaintiffs' due process claims pending the resolution of parallel state litigation if the Court denied the Defendants' Motion to Dismiss. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). Because the Court grants the Defendants' Motion to Dismiss with regard to the Plaintiffs' due process claims, the Court **DISMISSES** as moot Defendants' Alternative Motion to Stay.

### III. CONCLUSION

For the reasons set forth above the Court **GRANTS** Defendants' Motion to Dismiss and **DENIES** as moot Defendants' Alternative Motion to Stay. [Dkt. 11].

SO ORDERED.

Date: 02/17/2011

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution attached.

Distribution to:

**James S. Stephenson**
STEPHENSON MOROW & SEMLER
jstephenson@stephlaw.com

**Ian L. Stewart**
STEPHENSON MOROW & SEMLER
istewart@stephlaw.com,istewa@hotmail.com

**Alan D. Wilson**
lawkokomo@sbcglobal.net,mlbroadlick@sbcglobal.net